# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

KIMBERLYN J. P.,[1]

                     Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. 3:20-cv-00109-SLG

## DECISION AND ORDER

On or about January 25, 2016, Kimberlyn J.P. ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"),[2] alleging disability beginning September 1, 2014.[3]  On August 9, 2019, this Court reversed the Social Security Administration's final decision and remanded

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available* at www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II in this case.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 171–72, 698.  The application summary is dated January 26, 2016.  A.R. 171–72.

for further proceedings.[4]  Plaintiff has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[5]  Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[6]  For the reasons set forth below, Plaintiff's request for relief will be granted.

## I.    STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[7]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[9]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge

_____

[4] A.R. 769–802.

[5] Docket 1 (Plaintiff's Compl.).

[6] 42 U.S.C. § 405(g).

[7] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[8] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[9] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 2 of 34
Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 2 of 34

("ALJ")'s conclusion.[10]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[11]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [he] did not rely."[12]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[13]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[14]  In particular, the Ninth Circuit has held that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[15]

---

[10] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[11] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[12] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[13] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[14] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[15] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 3 of 34
Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 3 of 34

## II.    DETERMINING DISABILITY

The Act provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[16]  In addition, SSI may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[17]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[18]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[19]

---

[16] 42 U.S.C. § 423(a).

[17] 42 U.S.C. § 1381a.

[18] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[19] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 4 of 34

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[20] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[21] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[22] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[23] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity." *The ALJ concluded that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of September 1, 2014, through the date last insured of December 31, 2019.*[24]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not

---

[20] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[21] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[22] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[23] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[24] A.R. 700.

consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the 12-month duration requirement. *The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; left shoulder impingement; and migraine headache. The ALJ found that Plaintiff's hip bursitis; sacroiliac (SI) joint dysfunction; back pain; obesity; history of hernia and hypertension; and major depressive disorder were non-severe.*[25]

**Step 3.** Determine whether the impairment or combination of impairments meets or medically equals the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1. If the impairment(s) is(are) of a severity to meet or medically equal any of the listed impairments and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. *The ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.*[26]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including

---

[25] A.R. 700–01.

[26] A.R. 702–03.

impairments that are not severe.[27]  *The ALJ concluded that through the date last insured, Plaintiff had the RFC to perform light work except she was limited to sitting and standing/walking for four hours each in an eight-hour workday; occasionally climbing ramps or stairs; occasionally stooping and crouching; occasionally reaching overhead with the left upper extremity; occasionally pushing/pulling with the left upper extremity; occasionally climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to excessive vibration.[28]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.  Otherwise, the evaluation process moves to the fifth and final step.  *The ALJ found that through the date last insured, Plaintiff was "capable of performing past relevant work as a quality control mortgage loan officer."[29]*

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered

---

[27] 20 C.F.R. § 404.1520(a)(4).

[28] A.R. 703.

[29] A.R. 708–09.

disabled. *The ALJ determined that Plaintiff was capable of performing past relevant work and did not proceed to Step 5.[30]*

The ALJ concluded that Plaintiff was not disabled from September 1, 2014, through December 31, 2019, the date last insured.[31]

## III.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1964; she is 56 years old.[32]  She reported working as a quality control officer at a mortgage company from August 1998 to August 2014.[33]  On September 26, 2016, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[34]  After Plaintiff appeared and testified with representation at a hearing on August 14, 2017, the ALJ issued an unfavorable ruling.[35]  On June 25, 2018, the Appeals Council denied Plaintiff's request for review.[36]  Plaintiff timely appealed to this Court.  The Court reversed and remanded for further proceedings on August 9, 2019; the Court directed the Commissioner "to review [Plaintiff's] combination of impairments, adjust the RFC

---

[30] A.R. 708–09.

[31] A.R. 709.

[32] A.R. 171–72.

[33] A.R. 46–50, 191–93.

[34] A.R. 74.

[35] A.R. 12–25, 46–56.

[36] A.R. 1–5.

as warranted, and proceed to steps four and five as appropriate."[37] After a second hearing, the ALJ issued a second unfavorable decision on March 4, 2020.[38] Plaintiff exhausted her administrative remedies and requested review by this Court on May 12, 2020.[39]

## IV.    DISCUSSION

Plaintiff is represented by counsel. In her opening brief, Plaintiff asserts that the ALJ harmfully erred by: (1) failing to consider all of Plaintiff's medically determinable impairments; (2) rejecting Plaintiff's symptom testimony; (3) rejecting lay witness reports from Todd Pedersen and Roger Aldrich; and (4) rejecting Dr. Maya's medical opinion.[40] The Commissioner disputes Plaintiff's assertions.[41] The Court will address each of Plaintiff's assertions in turn:

A.    The ALJ's Step Two Finding

Plaintiff alleges that the ALJ failed to consider Plaintiff's chronic pain syndrome and hip impairments at Step Two of the sequential disability process and in the RFC assessment.[42] The Commissioner does not address Plaintiff's Step

---

[37] A.R. 769–802.

[38] A.R. 695–709.

[39] Docket 1.

[40] Docket 25 at 1–25.

[41] Docket 26 at 3–9.

[42] Docket 25 at 2–5.

Two argument directly, instead asserting that "the ALJ corrected the error from his prior decision" and therefore, "Plaintiff's argument here presents no basis for reversal."[43]

At Step Two of the ALJ's sequential disability evaluation, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.[44]  However, Step Two is a "de minimis screening device [used] to dispose of groundless claims."[45]  It is "not meant to identify the impairments that should be taken into account when determining the RFC."[46]  The Ninth Circuit has held that an ALJ's failure to address an impairment at Step Two was harmless error when the ALJ considered the limitations posed by the impairment at a later step in the sequential disability evaluation.[47]

_____

[43] Docket 26 at 3.

[44] *Bowen v. Yuckert,* 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1521 (effective until Mar. 27, 2017); *see also Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) (ALJ must have substantial evidence to find that medical evidence clearly establishes that claimant lacks medically severe impairment or combination of impairments); 20 C.F.R. § 404.1520 (a), (c).

[45] *Webb,* 433 F.3d at 687.

[46] *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017).

[47] *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding the ALJ's failure to consider bursitis at Step Two, if error, was harmless because the ALJ considered any limitations posed by the bursitis at Step Four); *Buck,* 869 F.3d at 1048–49 ("Step two is merely a threshold determination meant to screen out weak claims," and is "not meant to identify the impairments that should be taken into account when determining the RFC."  Therefore, the RFC should be "exactly the same regardless of whether certain impairments are considered 'severe' or not.") (internal citations omitted).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 10 of 34

1. *Chronic Pain Syndrome*

The record indicates that Kenneth Boomgaard, M.D., of AA Spine & Pain Clinic, diagnosed Plaintiff with chronic pain syndrome on October 11, 2016.[48] Medical providers continued to diagnose Plaintiff with chronic pain syndrome and prescribed pain medications specifically for chronic pain syndrome at multiple visits.[49] Additionally, Plaintiff complained of back pain, shoulder pain, neck pain, and hip and SI joint pain throughout the record.[50] However, the ALJ did not identify or discuss chronic pain syndrome at Step Two, or anywhere else in the decision. Instead, the ALJ summarily concluded that Plaintiff's pain was controlled with treatment, citing four treatment records, and that Plaintiff's pain condition "resulted in no more than transient symptoms during the relevant time."[51] However, as discussed below, the record does not contain substantial evidence that supports the ALJ's conclusion. The ALJ's failure to separately address chronic pain syndrome at Step Two was legal error.[52]

---

[48] A.R. 434–37, 783.

[49] *E.g.,* A.R. 392–93, 399–400, 411–17, 432–36, 1212, 1232, 1241, 1247, 1271, 1284, 1291, 1301, 1309, 1321, 1339, 1351, 1362, 1367, 1380, 1404, 1421, 1447, 1452, 1476, 1488, 1520, 1532, 1539.

[50] *E.g.,* A.R. 285–314, 316–63, 386–87, 404–11, 432–48, 1221, 1226, 1232, 1241, 1247, 1253, 1259, 1265, 1278, 1284, 1291, 1302, 1309, 1315, 1339, 1345, 1368, 1392, 1396, 1404, 1407–08, 1416, 1422, 1429, 1443, 1451, 1488, 1505, 1533, 1539.

[51] A.R. 701.

[52] 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017) ("Regardless of its source, we will evaluate every opinion we receive."); *see also Lingenfelter v. Astrue,* 504 F.3d 1028, 1045 (9th Cir. 2007) ("The decision of an ALJ fails . . . when the ALJ completely ignores or neglects to

The Court's next inquiry is whether the ALJ's error at Step Two is harmless. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."[53] Here, the ALJ failed to address Dr. Boomgaard's chronic pain syndrome diagnosis at all. As a result, the ALJ did not adequately consider any limitations for Plaintiff's chronic pain syndrome in the RFC. Moreover, the ALJ's failure to consider all of Plaintiff's impairments in the RFC, regardless of severity, was a deviation from the Court's previous order and legal error for this reason alone.[54] Therefore, the ALJ's failure to address Dr. Boomgaard's chronic pain syndrome diagnosis is not harmless and constitutes reversable error.[55]

## 2. *Hip Impairments*

Plaintiff argues that the ALJ violated the law of the case doctrine by determining that Plaintiff's hip impairments were "non-severe" in the decision after remand.[56] The Ninth Circuit has held that the law of the case doctrine applies to social security cases. This doctrine "generally prohibits a court from considering

---

mention a treating physician's medical opinion that is relevant to the medical evidence being discussed.").

[53] *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted).

[54] *Sullivan v. Hudson,* 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."), *overruled on other grounds in Shalala v. Schaefer,* 509 U.S. 292, 300 n.4 (1993).

[55] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015).

[56] Docket 25 at 2–4.

an issue that has already been decided by that same court or a higher court in the same case."[57]

In the first appeal, the Court pointed to evidence in the record dating back to 2004 contradicting the ALJ's determination that Plaintiff's hip bursitis was "transient" and did not cause significant vocational limitations.[58] The Court held that the ALJ had "failed to consider the combined effects of all of [Plaintiff]'s impairments, including her SI joint disfunction and hip impairments."[59] As noted by the Commissioner, the Court did not specifically order the ALJ to determine Plaintiff's hip impairments were severe.[60] Instead, the remand order directed the ALJ to conduct a new severity analysis. Therefore, the law of the case doctrine does not apply. The Court finds no error in the ALJ conducting a new Step Two severity analysis.

However, for the reasons set forth below, the ALJ did not adequately consider Plaintiff's hip impairments in combination with all of her impairments in the formulation of the RFC.

---

[57] *Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016) ("[T]he law of the case doctrine . . . appl[ies] in the social security context.").

[58] A.R. 794.

[59] A.R. 795.

[60] Docket 26 at 2. And yet the Court acknowledges some lack of clarity on this topic in the prior decision, as the Court stated there that "the ALJ erred by failing to consider [Plaintiff's] hip impairments in combination with her other severe impairments," which could be read to imply that the Court had found the hip impairments were severe. A.R. 801.

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 13 of 34

B. Plaintiff's Symptom Allegations

The ALJ's assessment of a claimant's symptoms has two steps.[61]  First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[62]  Here, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described.[63]

Second, "if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms."[64]  The ALJ must evaluate the consistency between the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms and the medical evidence and other evidence in the record.[65]  The ALJ is required to "specifically identify the testimony from a

---

[61] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

[62] *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

[63] AR. 700.

[64] *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996)).

[65] 20 C.F.R. § 404.1529(c)(1).  *See also* 20 C.F.R. § 404.1529(c)(3) (effective June 13, 2011, to Mar. 26, 2017) (Important indicators of the intensity and persistence of a claimant's symptoms include information such as "what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living."); SSR 16-3p.

claimant she or he finds not to be credible and explain what evidence undermines [that] testimony"; general findings are insufficient.[66]

Plaintiff testified at the hearing on February 13, 2020, that her migraines were "more than a couple of times a month, in fact, weekly."[67] She testified that her doctor had tried putting her on preventative medications, but the side effects had been too severe. She indicated that she took medication for migraines, but her monthly doses were limited. She reported having 15 untreated migraines per month after running out of her monthly dose of migraine medication. Plaintiff testified that her migraines prevented her from driving due to a loss of vision and she had to "lay in the dark, no kids, no TV, none of that stuff." She testified that her migraines also caused vomiting, noise sensitivity, and lasted up to three days at a time.[68]

Plaintiff also testified that pain in her low back, hips, and legs interfered with her ability to focus approximately 10 days a month and that she had flare ups about once every four months that made it difficult for her to walk and lay down and prevented her from bending over. She indicated that each flare up lasted between seven to ten days at a time. She testified that her doctors had reduced

---

[66] *Treichler,* 775 F.3d at 1102 (quoting *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001)); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995).

[67] A.R. 726–27. At the hearing in August 2017, Plaintiff testified she had severe migraines two to three times a month, lasting up to two days. A.R. 54.

[68] A.R. 726–30.

her pain medications due to a government or insurance company mandate. She testified that she had received SI joint and hip bursitis injections, ablation on both sides of her back, and that three different doctors had recommended SI joint fusion.[69]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. First, the ALJ found that "the longitudinal medical evidence of record is not consistent with the degree of functional impact alleged." The ALJ also noted that the medical evidence since the last hearing decision did not fully support Plaintiff's alleged severity.[70] However, this reason alone is not specific, clear, and convincing, because an ALJ "may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."[71]

In discounting Plaintiff's symptom testimony, the ALJ also stated, "[m]uch of the longitudinal evidence revealed routine follow-up for medication management."

---

[69] A.R. 726–36.

[70] A.R. 704–05.

[71] *Coleman v. Saul,* 979 F.3d 751, 756 (9th Cir. 2020) (citing *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998)).

He noted that since August 2017, Plaintiff's pain was under control with no reports of side effects.[72] The effectiveness of medication and improvement with other treatment are factors an ALJ may consider in evaluating the intensity and persistence of a claimant's symptoms.[73] However, the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"[74] Here, the ALJ cited four treatment records to conclude that Plaintiff's reports to providers that her pain was well controlled through medication was inconsistent with Plaintiff's testimony about the severity of her symptoms.[75]

In the treatment records, Plaintiff repeatedly reported to treatment providers constant, severe pain in the shoulders, low back, neck, head, and hips.[76] As Plaintiff points out in her briefing, the ALJ must consider symptoms recorded by medical sources, including the description of the character and location of the symptoms and changes over time.[77] The ALJ did not mention the pain levels

---

[72] A.R. 705.

[73] 20 C.F.R. § 404.1529 (c)(3); SSR 16-3p (Oct. 25, 2017), *available at* 2017 WL 5180304.

[74] *Hill v. Astrue,* 388 F.3d 1144, 1159 (9th Cir. 2012) (internal citations omitted).

[75] A.R. 705.

[76] *E.g.,* A.R. 285–314, 316–63, 386–87, 404–11, 432–48, 1221, 1226, 1232, 1241, 1247, 1253, 1259, 1265, 1278, 1284, 1291, 1302, 1309, 1315, 1339, 1345, 1368, 1392, 1396, 1404, 1407–08, 1416, 1422, 1429, 1443, 1451, 1488, 1505, 1533, 1539.

[77] SSR 16-3p at *6–7 (Oct. 25, 2017) ("Important information about symptoms recorded by medical sources and reported in the medical evidence may include . . . [o]nset, description of the character and location of the symptoms, precipitating and aggravating factors, frequency and

Plaintiff reported to her providers in the decision. She reported pain levels ranging from 3/10 to 8/10 to providers, while also reporting that her medications were helpful overall.[78] And, although the ALJ again discounted Plaintiff's pain testimony in part based on "normal strength," the Court held previously that the record of "treatment notes and other objective evidence of low back pain, hip pain, and migraines . . . would not necessarily be outweighed by evidence of 'normal strength.'"[79]

Further, at the hearing in August 2017, Plaintiff testified that although her doctor recommended surgery, Plaintiff's insurance would not approve any fusions at that time.[80] The record also shows Plaintiff underwent medial branch blocks, radiofrequency ablation, and steroid injections to relieve pain.[81] In February 2020, she testified that she had received SI joint injections, hip bursitis injections, and RF ablation since August 2017.[82]

---

duration, change over a period of time (e.g., whether worsening, improving, or static), and daily activities."). *See also Bunnell v. Sullivan,* 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

[78] *E.g.,* A.R. 239, 243, 247, 251, 255, 259, 267, 285, 294–95, 303–04, 310, 316–17, 325, 334, 336, 347, 350, 354, 386, 390, 400–01, 406–07, 410, 413, 432, 434, 1196.

[79] A.R. 705, 799.

[80] A.R. 54.

[81] A.R. 325, 401, 434, 735, 1131–35, 1204.

[82] A.R. 735. At the hearing in August 2017, Plaintiff testified she had severe migraines two to three times a month, lasting up to two days. A.R. 54.

The record also shows Plaintiff was prescribed opioids and benzodiazepines at the same time, which the pharmacist repeatedly noted, "should be reserved for cases where alternatives are inadequate." The pharmacist also advised that Plaintiff have access to naloxone.[83] Plaintiff was hospitalized twice during the relevant disability period for complications associated with her prescribed medications.[84] She reported headache pain and migraines throughout the relevant time period and changed migraine prescriptions either due to reported side effects or reports that the medication stopped providing relief.[85] While Plaintiff reported that medication helped control her migraines, she simultaneously reported that she still experienced two to three migraines a week or five to six per month.[86] She was prescribed up to three different medications at a time for headaches.[87] The ALJ cited a treatment record from December 2019 in determining that Plaintiff's "reports of symptoms or lack thereof strongly suggests that her conditions did not impact her to the extent alleged."[88] However, the December 2019 record cited by the ALJ shows that not only did Plaintiff report that gabapentin made her feel lightheaded,

---

[83] A.R. 977.

[84] A.R. 325, 449.

[85] *E.g.,* A.R. 263, 281, 286, 299, 334, 385, 394, 400–01, 404, 408, 411, 432, 1221, 1265, 1278, 1309, 1339, 1345.

[86] A.R. 1278, 1265, 1309, 1315.

[87] A.R. 1302.

[88] A.R. 706.

Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 19 of 34

loopy, and have memory loss, she also reported a pain level of 6/10 with medication, an average level of pain of 7/10, and throbbing and burning pain that lasted all day long. In that same record, Plaintiff also reported that Topamax and Toradol caused moderate to severe nausea.[89] In sum, there is not substantial evidence in the record of this case to support the ALJ's conclusion that Plaintiff's testimony regarding her pain and migraines was inconsistent with her reports in treatment records.

The ALJ also discounted Plaintiff's pain and symptom testimony based on her reports of daily activities.[90] Daily activities inconsistent with a claimant's self-described level of pain is a valid reason for an adverse credibility finding if supported by substantial evidence.[91] However, a claimant "does not need to be utterly incapacitated in order to be disabled."[92] Rather, a claimant's daily activities must show that the claimant is "able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."[93] In her function report from August 2016, Plaintiff reported that her hip and back pain made it hard for her to sleep in a comfortable

---

[89] A.R. 1390–93.

[90] A.R. 706. *See also Revels,* 874 F.3d at 667–68.

[91] *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).

[92] *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017) (quoting *Vertigan v. Halter,* F.3d 1044, 1050 (9th Cir. 2001)).

[93] *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989).

position.  She reported that she could prepare only frozen meals, sandwiches, and instant food; vacuumed rarely; and did not go outside often because of hip and leg pain.  She reported she could only walk two blocks before resting for 15 to 20 minutes; did not drive due to her pain medications; shopped by computer; and watched television.[94]  Plaintiff testified at her February 2020 hearing that she watched her grandson in the afternoons and took care of her autistic son; sometimes watched TV, read books, or read the news online; and tried to do chores.  She testified she also spent time during her day managing pain with heat wraps and lying down.[95]  Although the ALJ noted that Plaintiff spent time handling her autistic son's mental health issues, he did not acknowledge that Plaintiff's testimony indicated the issues with her son had "come up of late."[96]  The ALJ did not explain how Plaintiff's ability to prepare frozen or instant meals and ability to perform some household chores enabled her to work full time as a quality control mortgage loan officer.[97]  Moreover, because the ALJ did not consider Plaintiff's chronic pain syndrome diagnosis, he did not consider the combined psychological and physical effects of chronic pain syndrome on Plaintiff's daily activities.[98]  The

---

[94] A.R. 194–201.

[95] A.R. 732–33.

[96] A.R. 732.

[97] A.R. 706; *see Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

[98] *See Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (recognizing chronic pain syndrome has "both a physical and psychological component" and ALJ is required to "consider *all* available

Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 21 of 34

ALJ's conclusion that Plaintiff's daily activities undermined her symptom testimony is not supported by substantial evidence.

The ALJ found a "significant disparity" in the record regarding Plaintiff's work history. Plaintiff sought disability benefits claiming an inability to work due to her medical condition. However, treatment records indicated she told health care providers that she was unemployed due to her father selling the family business.[99] On March 17, 2015, Plaintiff reported to her medical providers that she was "currently unemployed due to her father's company being bought out."[100] In a treatment record from September 15, 2014, Plaintiff reported that she was "working for her father but he recently decided to retire and sell the business 'then he decided to take a 5 year contract so I will still have a job for the next 5 years.'"[101] In the Ninth Circuit, an ALJ may discount testimony regarding a claimant's subjective pain complaints based in part on statements by the claimant to doctors that she stopped working for reasons other than her impairments.[102]

However, as explained in the Court's first order in this case, "[Plaintiff's father] stated that as [Plaintiff]'s pain worsened over time, her medications 'made

---

evidence in assessing complaints of pain").

[99] A.R. 706.

[100] A.R. 232.

[101] A.R. 230.

[102] *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

it more difficult for her to concentrate to the point she was unable to perform her duties.' He also indicated that due to pain, [Plaintiff] was unable to sit at her workstation 'for an extended period of time without the use of medication.' [Plaintiff's father] reported that in 2010, he allowed Plaintiff to work part-time from home, but within a year, 'she stopped coming to work completely and I relieved her of all her work assignments.' He reported continuing to pay her 'even though she couldn't perform the simplest of tasks.' [Plaintiff's father] stated that in 2014, he 'entered into negotiations to sell the company effective at the end of the year and terminated [Plaintiff] in August of that year as the new owners wouldn't approve an arrangement where I paid my daughter to do nothing.'"[103]

Although the ALJ gave Plaintiff's father's report "little weight," he did not dispute the accuracy of her father's report of Plaintiff's work history. Instead, the ALJ discounted the report because Plaintiff's symptoms "indicated waning severity and improved functioning with treatment, namely medication management" and because Plaintiff had only "sparse" medication side effects.[104] As set forth above, the record does not support the ALJ's conclusion that Plaintiff's symptoms were managed by medication with only sparse side effects. The ALJ's conclusion that Plaintiff stopped working for reasons other than her impairments is not supported

---

[103] A.R. 790–91.

[104] A.R. 708.

by substantial evidence in the record and is not a specific, clear, or convincing reason to discount Plaintiff's symptom testimony in this case.

Based on the foregoing, the ALJ did not provide specific, clear, or convincing reasons, supported by substantial evidence, for finding Plaintiff's allegations regarding the severity of her symptoms not wholly credible.[105]

## C. Dr. Maya's Medical Opinion

Dr. Maya testified as a medical expert at Plaintiff's first hearing before the ALJ on August 14, 2019. She testified then that Plaintiff would miss on average up to two days per month due to back pain and migraines.[106] In the Court's first order, the Court rejected the ALJ's reasons for discounting Dr. Maya's opinion that Plaintiff would miss work each month due to migraines and pain from a combination of physical impairments. The Court held that the ALJ's determination that Plaintiff's normal strength on exam was not consistent with missing work due to low back pain and migraines. Additionally, the Court held that the longitudinal record examined by Dr. Maya contained treatment notes and other objective evidence of low back pain, hip pain, and migraines that would not necessarily be outweighed by evidence of "normal strength." The Court also held that Plaintiff's

---

[105] Although the Commissioner asserts that this Court "identified no error the ALJ's prior assessment of Plaintiff's symptom allegations," the Court did not reach this issue as it reversed and remanded the case back to the ALJ on two other grounds. Docket 26 at 3, n. 2. A.R. 800–01.

[106] A.R. 39–42.

reported improvement of her symptoms on medication was insufficient to undermine Dr. Maya's expert opinion that migraines would cause Plaintiff to miss work at least once per month.[107]

In the second decision, the ALJ again gave this portion of Dr. Maya's opinion no weight, reasoning the opinion was "speculative at best." The ALJ reasoned that the longitudinal record showed medication controlled both Plaintiff's pain and migraines.[108] The ALJ also cited Dr. LeBeau's testimony that Plaintiff's migraines were not severe enough to bring her to the emergency room and Dr. LeBeau's opinion that migraines in general are treatable.[109]

The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.[110] "The weight afforded a non-examining physician's testimony depends on the degree to which [s]he provides supporting explanations for [her] opinions."[111] Greater weight may also be given to the opinion of a non-examining expert who testifies at a hearing because she or he is subject

---

[107] A.R. 797–99. The Court acknowledges that this sentence of the Court's prior decision does not precisely track Dr. Maya's testimony.

[108] A.R. 707.

[109] A.R. 707, 724–25.

[110] *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

[111] *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotations and citations omitted).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 25 of 34

to cross examination.[112]

The ALJ rejected Dr. Maya's medical opinion regarding the frequency of Plaintiff's migraines and pain interfering with work as "speculative at best," but the ALJ did not explain how that opinion is speculative, particularly as the ALJ gave "great weight" to the all the rest of Dr. Maya's opinions that assessed the severity of her impairments. For this reason, the ALJ's conclusory statement does not justify the rejection of Dr. Maya's opinion that Plaintiff would miss up to two days of work per month due to her migraines and pain.[113]

The ALJ pointed to a record from June 2017[114] in which Plaintiff reported that she had fewer headaches and less intense headaches after starting on Imitrex and Topamax. Although the record did not specify how many headaches Plaintiff experienced, it shows Plaintiff's Topomax dose had been increased. Plaintiff also reported a pain level of 6/10 with medication on that date.[115] The ALJ also cited treatment visits at which Plaintiff reported using less than nine tablets of Imitrex per month and reported increased mobility and function.[116] However, as shown

---

[112] *Andrews v. Shalala*, 53 F.3d 1035, 1042 (citing *Torres v. Secretary of H.H.S.*, 870 F.2d 742, 744 (1st Cir. 1989)).

[113] *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion.").

[114] The Court's review of the record shows a date of July 2017. A.R. 387.

[115] A.R. 386–87, 707.

[116] A.R. 707.

above, the record as a whole does not support the ALJ's conclusion that Plaintiff's migraines and other pain were adequately controlled by medication. Specifically, Plaintiff repeatedly reported migraines occurring between two and six times a month in treatment notes.[117] In a record from December 2018, Plaintiff reported between five to seven migraines per month and that her insurance company only covered nine tablets per month.[118] Further, according to the agency's rules, "increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms."[119] Here, Plaintiff's providers changed or increased the dose of her pain and migraine medications throughout the relevant period.[120] Moreover, Plaintiff testified that if she did not take her medication in time, her migraines could last up to three days and she would need to lay in the dark.[121] Therefore, Dr. Maya's opinion that Plaintiff would miss work up to two days per month for

---

[117] *E.g.,* A.R. 1265, 1278, 1309, 1315, 1413, 1434, 1457.

[118] A.R. 1451.

[119] SSR 96-7p, *available at* 1996 WL 374186, at *7. Social Security Rulings (SSRs) "do not carry the force of law but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009).

[120] *E.g.,* A.R. 254, 283–84, 299, 301, 348, 351, 394, 401, 404, 411, 414, 417, 1309, 1393, 1435.

[121] A.R. 728–30.

migraines and back pain is consistent with Plaintiff's testimony and with her reports to providers.

Dr. LeBeau testified that there were no treatment records showing Plaintiff went to the emergency room for migraines. He made statements indicating that migraines are generally treatable "for a crowd of people." Based on Plaintiff's record, Dr. LeBeau opined that Plaintiff may have migraines "once or twice a month, something like that."[122] None of these opinions undermine Dr. Maya's conclusion that Plaintiff would miss up to two days of work per month for migraines and other pain.[123]

For the reasons provided above, substantial evidence does not support the ALJ's rejection of Dr. Maya's opinion that Plaintiff would miss work up to two days of work each month due to migraines and other pain.

D. Lay Testimony

Plaintiff asserts that the ALJ failed to provide germane reasons for discounting Plaintiff's husband's report. She argues that it was legal error for the ALJ to discount her husband's statement that Plaintiff could not sit or stand for long periods of time on the basis that it was not supported by objective evidence. She also asserts that the ALJ's reasons for rejecting her father's statements were not

---

[122] A.R. 724–25.

[123] *Hay v. Saul,* 2020 WL 2745715, at *8 (E.D. Cal. May 27, 2020) ("[T]he mere fact that plaintiff did not seek treatment at an emergency room does not undermine his allegations.").

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 28 of 34

Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 28 of 34

germane.[124]

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."[125]  In the Ninth Circuit, a lack of support from the overall medical evidence is not a proper basis for disregarding a lay witness's observations.[126]  However, inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness.[127]

Here, the ALJ noted that Plaintiff's husband's reports may have reflected his personal observations to some extent, but the ALJ concluded that "the record as a whole, including physical exams consistently showing normal strength, as well as, the claimant's own admissions of waning severity with medication management, does not support the degree of severity implicated by this lay report."  The ALJ also gave Plaintiff's father's report "little weight," reasoning that Plaintiff's pain and migraines were managed with medication, her physical exams showed no significant neurological deficit, and any medication side effects were "sparse."[128]

---

[124] Docket 25 at 22.

[125] *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) (internal citations omitted).

[126] *Diedrich v. Berryhill,* 874 F.3d 634, 640 (9th Cir. 2017).

[127] *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis,* 236 F.3d at 511).

[128] A.R. 708.

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 29 of 34

However, the longitudinal record contains treatment notes and other objective evidence of low back pain, hip pain, and migraines that would not necessarily be outweighed by evidence of "normal strength."[129]   And, for the reasons provided above regarding Plaintiff's symptom testimony, Dr. Maya's opinion on missing work, and the ALJ's failure to account for chronic pain syndrome, discounting the lay testimony in this case because Plaintiff's pain and other symptoms were reportedly controlled by routine medication management with few side effects is not supported by substantial evidence in the record and hence is not a germane reason.

E. The ALJ's Formulation of the RFC

Plaintiff also contends that the ALJ failed to consider Plaintiff's hip impairments and chronic pain syndrome in combination with her other impairments to formulate the RFC.[130]   A court should affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and [her] decision is

---

[129] *E.g.,* A.R. 239–41, 243–46, 247–49, 255–61, 263–65, 285–87, 290–302, 401–04, 410–11, 413–14, 1221, 1226, 1232, 1241, 1247, 1253, 1259, 1265, 1278, 1284, 1291, 1302, 1309, 1315, 1339, 1345, 1368, 1392, 1396, 1404, 1407–08, 1416, 1422, 1429, 1443, 1451, 1488, 1505, 1533, 1539.

[130] Docket 25 at 5–6.

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 30 of 34

supported by substantial evidence."[131]  It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."[132]

In the decision after remand, the ALJ determined that Plaintiff's hip bursitis and SI joint dysfunction were non-severe through the date last insured.  He reasoned that Plaintiff's reports of pain control with medication and Dr. LeBeau's testimony "regarding the nature of these conditions" showed Plaintiff's hip impairment was non-severe during the relevant time period.[133]  The RFC included walking/standing and sitting limitations of four hours each and occasional climbing, stooping, and crouching.[134]  However, this RFC does not take Plaintiff's chronic pain syndrome into account in combination with Plaintiff's migraines and other pain.  Moreover, as shown above, the record does not support the ALJ's conclusion that Plaintiff's pain was controlled with medication nor does it support discounting Plaintiff's pain testimony.

Although the ALJ relied on Dr. LeBeau's opinion that SI joint pain and hip bursitis are typically resolved with treatment such as physical therapy and steroid injections, Dr. LeBeau cited to none of Plaintiff's records and assessed no specific

---

[131] *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

[132] *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001).

[133] A.R. 701.

[134] A.R. 703.

work-related functional limitations.[135]  Therefore, his testimony was unsupported. As set forth above, Dr. LeBeau's testimony was not consistent with the treatment record.  It does not serve as substantial evidence in support of the ALJ's RFC assessment.

In sum, the ALJ did not address all of the functional limitations resulting from the combination of Plaintiff's impairments, including Plaintiff's hip impairments and chronic pain syndrome.  Therefore, the RFC is deficient.

F.  Scope of Remand

When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[136]  A court follows a three-step analysis to determine whether a case raises the "rare circumstances" that allow a court to exercise its discretion to remand for an award of benefits.  "First, [a court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"[137] "Second, [a court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'"[138]  "Where there is conflicting evidence, and not all essential

---

[135] A.R. 707, 720–24.

[136] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

[137] *Brown-Hunter v. Colvin,* 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison,* 759 F.3d at 1020).

[138] *Id.* (quoting *Garrison,* 759 F.3d at 1020).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 32 of 34

factual issues have been resolved, a remand for an award of benefits is inappropriate."[139] "Third, [a court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'"[140] But, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[141]

Here, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony regarding her pain and Dr. Maya's opinion that Plaintiff would miss up to two days per month for back pain and migraines. The medical record is fully developed and does not support the ALJ's conclusion that Plaintiff's pain and migraines were controlled with minimal adverse side effects. The record also does not support the ALJ's conclusion that Plaintiff required only routine follow-up for medication management. Dr. Maya opined that Plaintiff would miss work up to two days per month due to her impairment. Credited as true, Dr. Maya's opinion that Plaintiff would miss work up to two days per month; that opinion is consistent with Plaintiff's testimony and the treatment record. The vocational expert testified

---

[139] *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

[140] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

[141] *Id.* (quoting *Garrison*, 759 F.3d at 1021).

at Plaintiff's previous hearing that if an individual had to call out sick from work at least two days a month unscheduled and on an ongoing basis, that individual would not be able to sustain competitive employment.[142]  If Dr. Maya's opinion is credited as true, then Plaintiff is disabled.  Finally, the Court's review of the record as a whole does not create a serious doubt whether Plaintiff is disabled.[143]  Based on the foregoing, a remand for the calculation and award of benefits is warranted for a disability onset date of September 1, 2014, through December 31, 2019.

## V.   ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence.  Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 25 is GRANTED, and the Commissioner's final decision is VACATED and REMANDED for the calculation and award of benefits based on a finding of disability commencing on September 1, 2014, through December 31, 2019.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 24th day of September, at Anchorage, Alaska.


_/s/ Sharon L. Gleason_____
UNITED STATES DISTRICT JUDGE

---

[142] A.R. 60, 694.

[143] *Revels v. Berryhill,* 874 F.3d 648, 669 (9th Cir. 2017).

Case No. 3:20-cv-00109-SLG, *Kimberlyn J.P. v. Comm'r of Soc. Sec.*
Decision and Order
Page 34 of 34

Case 3:20-cv-00109-SLG   Document 29   Filed 09/24/21   Page 34 of 34